**FILED**



3:15 pm, 4/19/24

**Margaret Botkins**
**Clerk of Court**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

SEEDX, INC.,

       Plaintiff,

    v.

LINCOLN STRATEGY GROUP LLC;
FORTIFIED CONSULTING LLC;
NATHAN SPROUL; and KANYE
2020,

       Defendants.

Case No.  2:23-CV-00142-ABJ

---

### ORDER GRANTING KANYE 2020'S *MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 8 AND 12(B)(6)* [ECF No. 18] AND TRANSFERRING REMAINING CLAIMS AGAINST THE LINCOLN DEFENDANTS TO THE DISTRICT OF ARIZONA

---

      **THIS MATTER** comes before the Court on Kanye 2020's *Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 8 and 12(b)(6)* (ECF No. 18) (hereinafter "Kanye 2020's *Motion*") and Lincoln Strategy Group LLC, Fortified Consulting LLC, and Nathan Sproul's (collectively "the Lincoln Defendants") *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)* (ECF No. 20) (hereinafter "Lincoln Defendants' *Motion*").[1] After reviewing the motions, the responsive filings, the applicable law, and being otherwise fully advised, Kanye 2020's *Motion* shall be

---

[1] "Lincoln Strategy Group, LLC, is a limited liability corporation organized under the laws of the State of Arizona. Lincoln Strategy Group, LLC, is owned by Sproul & Associates, Inc., which is a corporation organized in Arizona. Nathan Sproul and his wife, Tiffani Sproul, are the owners of Sproul & Associates, Inc., and they are both residents of the State of Arizona." ECF No. 32 at 1. "Fortified Consulting, LLC, is a limited liability corporation organized under the laws of the Commonwealth of Virginia. Fortified Consulting, LLC, has one owner/member: Lincoln Strategy Group, LLC, a limited liability corporation organized under the laws of Arizona and a resident of Arizona." ECF No. 33 at 1.

1

**GRANTED**, and as such all claims against Kanye 2020 shall be **DISMISSED WITHOUT PREJUDICE**. Additionally, we find that in the interest of justice the claims against the Lincoln Defendants shall be **TRANSFERRED** to the United States District Court for the District of Arizona under 28 U.S.C. § 1631 for further proceedings.

## BACKGROUND

With his sights upon America's highest office, one-time presidential hopeful Kanye West ("Mr. West") formed "Kanye 2020"—a Wyoming Mutual Benefit Nonprofit Corporation—to aid in the administration and promotion of his campaign. ECF No. 1 ¶ 25.[2] And while the Oval Office was not in the cards, millions of dollars of work was performed in support of Mr. West's lofty goal. *Id.* ¶ 46. Work that the Plaintiff in this action, SeedX Inc. ("SeedX" or "Plaintiff"), alleges it was not paid for. *Id.* ¶ 1.

SeedX[3]—a self-described "one-stop-shop" for marketing, digital consulting, and e-commerce—was founded by Jacqueline Basulto Rashidi ("Ms. Basulto") and Justin Rashidi ("Mr. Rashidi") in 2016.[4] *Id.* ¶ 15. On June 30, 2020, the Lincoln Defendants reached out to SeedX to discuss potential business opportunities. *Id.* ¶ 21. The relationship ultimately led to SeedX contributing to the Kanye 2020 campaign effort. The type of work performed, however, requires a little exposition. This is not the door-to-door

---

[2] ECF No. 1 ¶ 25 ("On July 15, 2020, West filed a Statement of Organization with the Federal Election Commission ("FEC"), listing as the address 3202 Big Horn Avenue, Cody, Wyoming 82414. The Treasurer was listed as Andre Bodiford, and the First Bank of Wyoming, 1426 Sheridan Avenue in Cody, Wyoming was listed as the sole banking relationship. Kanye 2020 was incorporated as a mutual benefit nonprofit corporation in Wyoming on July 23, 2020."); *see* ECF No. 31 at 1 ("Kanye 2020 is a nonprofit corporation formed and registered in the State of Wyoming with its principal place of business at 374 7th Ave. West, Unit 7253, Newark, NJ 07107.").

[3] SeedX was incorporated in Delaware, and its principal place of business is in Nevada. ECF No. 1 ¶ 2.

[4] SeedX was formerly known as Geoplay, Inc., but its name was officially changed on August 28, 2017. ECF No. 1 ¶ 15.

canvassing or cold calling typically associated with presidential campaigns; rather, Plaintiff's alleged contributions to Mr. West's campaign were of the digital and e-commerce variety. *Id.* As SeedX puts it:

> Plaintiff functioned effectively as the hub of the campaign's marketing and online digital operation, contributing substantial creative input and original design work; taking the lead role in donor strategy/campaign donation strategy; and managing all major e-commerce functions (inventory, orders, shipping and customer data), which comprised, as a practical matter, the only part of the Campaign to garner donations.

*Id.*

In its initial dealings with the Lincoln Defendants, SeedX notes that it was not always clear "which entity was involved in any particular issue." *Id.* ¶ 20. But because both Fortified and Lincoln were controlled by Nathan Sproul ("Mr. Sproul") "[a]s a practical matter, SeedX's primary contact" was with Mr. Sproul. *Id.* In August of 2020, after doing some work for the Lincoln Defendants—work unrelated to Kanye 2020—SeedX alleges that Mr. Sproul asked Ms. Basulto if she and SeedX would be interested in providing services to aid Kanye 2020. *Id.* ¶ 28. SeedX "was interested in the opportunity" and "asked for a written agreement memorializing the terms." *Id.* SeedX alleges that Mr. Sproul "advised that as long as they agreed on the basic idea, they could figure out the details and reduce the agreement to writing as the actual scope of the work became clearer." *Id.*

These types of verbal assurances from the Lincoln Defendants are a recurring theme in SeedX's *Complaint. See id.* ¶¶ 28, 36. That is, the working arrangements with the Lincoln Defendants were almost exclusively oral. In fact,

the only agreements that were reduced to writing were a nondisclosure agreement

between SeedX and the Lincoln Defendants and another unrelated agreement (*viz.*,

neither involved Kanye 2020). *Id.* ¶¶ 22–23.

Despite the lack of a written contract with the Lincoln Defendants or Kanye

2020, SeedX alleges it began performing work for the Lincoln Defendants to aid

Kanye 2020's campaign. And it continued to provide services including presenting

"a 32-slide 'pitch deck' that included strategies to accomplish the Campaign's

goals."[5] *Id.* ¶ 30. The pitch deck was presented to Kanye 2020, but SeedX alleges

that the Lincoln Defendants requested that the SeedX logo or name be replaced

with "Lincoln" on the first slide of the presentation. *Id.* ¶ 31. It obliged, and the

presentation was made without any reference to SeedX. *Id.* After the presentation,

SeedX claims, the campaign adopted many of the concepts contained in the pitch

deck. *Id.*

SeedX also alleges that it created a website and digital storefront for Kanye

2020. *Id.* ¶¶ 32–35. And although, SeedX was continuously working on projects

related to Kanye 2020, it had yet to be paid by the Lincoln Defendants. SeedX

was, for good reason, wary of this arrangement, and again, it asked Mr. Sproul for

the contract to be reduced to writing. *Id.* ¶ 36. And again, Mr. Sproul assured

SeedX that "they would work out the details later." *Id.* SeedX alleges that its prior

dealings with Mr. Sproul eased some of its concerns, but in the end, the

---

[5] A "pitch deck" is essentially series of slides, such as a PowerPoint, that typically detail business strategies and concepts.

arrangement was never reduced to writing, and SeedX was never paid by the Lincoln Defendants. *Id.* ¶ 46.

All told, "Kanye 2020 paid $13,210,013.12 for services provided…in 2020. Over one-third of that total amount, $4,769,529.86, was paid to [the Lincoln Defendants]." *Id.* After repeated efforts to be paid, SeedX, Ms. Baulto, and Mr. Rashidi brought suit against Kanye 2020 and the Lincoln Defendants in a Texas state court; that action was removed to the United States District Court for the Western District of Texas.[6] A magistrate judge in that district recommended that the action be dismissed for lack of personal jurisdiction over both Kanye 2020 and the Lincoln Defendants.[7] District Court Judge Pitman adopted the findings of the magistrate and the case was closed.[8]

After that case was dismissed, SeedX filed suit in this Court seeking to recover for the alleged work it performed for the Lincoln Defendants and Kanye 2020. To that end, SeedX brings five claims for relief: (i) breach of an oral or implied contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) quantum meruit/unjust enrichment; (iv) conversion; and (v) fraud.[9] ECF No. 1 ¶¶ 53–75. Both Kanye 2020 and the Lincoln Defendants have filed separate

---

[6] *Basulto v. Sproul*, No. 1:21-CV-00592-RP (W. D. Tex. July 7, 2021).

[7] *See* Report and Recommendation of the United States Magistrate Judge, *Basulto v. Sproul*, No. 1:21-CV-00592-RP (W. D. Tex. Nov. 2, 2021), ECF No. 16.

[8] *See* Order Adopting Report and Recommendation of United States Magistrate Judge, *Basulto v. Sproul*, No. 1:21-CV-00592-RP (W. D. Tex. Nov. 30, 2021). ECF No. 18.

[9] The conversion and fraud claims are brought only against the Lincoln Defendants, and those claims "are based on the alternate claim that they were in fact acting on their own behalf, rather than as agents for Kanye 2020." ECF No. 1 ¶ 69.

motions to dismiss. In essence, Kanye 2020 argues that SeedX has failed to state a claim upon which relief can be granted. *See* ECF No. 18; ECF No. 19. And the Lincoln Defendants argue that this Court lacks personal jurisdiction over them. *See* ECF No. 20; ECF No. 21.

## LEGAL STANDARDS

### I. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal where a plaintiff's complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To withstand a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). A recitation "of the elements of a cause of action supported by mere conclusory statements, do[es] not suffice." *Id.* And "naked assertions devoid of further factual enhancement" are equally insufficient under the 12(b)(6) standard. *Id.* (quotation marks omitted). At a minimum, a well-pleaded complaint requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

The Tenth Circuit has construed "plausibility" to refer to the scope of the allegations included in the complaint rather than the likelihood the allegations are true. *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). That is, "if the[ the allegations] are so general that they encompass a wide swath of

6

conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Id.* at 1247 (quoting *Twombly*, 550 U.S. at 570). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Of course, "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210,1215 (10th Cir.2011).

Additionally, the Tenth Circuit has noted that the plausibility requirement is meant "not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins*, 519 F.3d at 1249. And finally, in its review, the court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

## II.    Personal Jurisdiction

"There are three ways in which a court may obtain personal jurisdiction over a defendant; consent by the parties, presence in the forum state, and actions by the defendant which affect people in the forum state." *Qwest Commc'ns Int'l, Inc. v. Thomas*, 52 F.Supp.2d 1200, 1204 (D. Colo. 1999) (citation omitted). If the defendant does not consent and they are not present in the forum, they may assert lack of personal

7

jurisdiction as a defense to the suit. At that point, the plaintiff bears the burden of establishing that the district court has personal jurisdiction over the defendant. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). The plaintiff meets this burden by making a prima facie showing that personal jurisdiction exits—*i.e.*, that the defendant has sufficient minimum contacts with the forum. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). When determining whether the plaintiff has met its burden, the Court takes as true all the complaint's well-pleaded allegations. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008).

A district court can only exercise personal jurisdiction over nonresident defendants "if doing so complie[s] with the forum state's long-arm statute and the Fourteenth Amendment's Due Process Clause." *Gould v. Wyse*, No. 22-2075, 2023 U.S. App. LEXIS 20140, at *5–6 (10th Cir. Aug. 4, 2023). Wyoming's long-arm statute allows Wyoming courts to exercise personal jurisdiction on any basis that is consistent with the United States Constitution or the Wyoming Constitution. Wyo. Stat. Ann. § 5-1-107(a); *Black Diamond Energy Partners 2001-A Ltd. v. S & T Bank*, 2012 WY 84, 278 P.3d 738, 742-43 (Wyo. 2012); *see Eighteen Seventy L.P. & Marie Kennedy Found. v. Jayson*, 532 F. Supp. 3d 1125, 1131-32 (D. Wyo. 2020). "Because Wyoming's long-arm statute confers the maximum jurisdiction permissible consistent with due process, the personal jurisdiction inquiry can be collapsed into a single analysis under the Due Process Clause." *Eighteen Seventy L.P.*, 532 F. Supp. at 1131–32 (citing *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010)).

Due process provides that a district court—sitting in diversity—"may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)).[10] Those "minimum contacts" must be strong enough with the forum state that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (citation and internal quotation marks omitted). A nonresident defendant makes "minimum contacts" with a forum when they "purposefully" direct or avail themself to the forum state. *See Gould*, U.S. App. LEXIS 20140, at *6 n.7 ("The defendant must deliberately direct his or her conduct at the forum state and cannot be subjected to suit based on merely random, fortuitous, or attenuated contacts with the forum state.") (citation and internal quotation marks omitted); *see also Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012) ("The contacts with the forum must make being sued there foreseeable so that the defendant could 'reasonably anticipate' the suit." (citing *World-Wide Volkswagen*, 444 U.S. at 297)).

There are two types of personal jurisdiction: general and specific. *Hood v. Am. Auto Care, Ltd. Liab. Co.*, 21 F.4th 1216, 1221 (10th Cir. 2021) (citation omitted). General jurisdiction allows courts to "hear *any* claim against that defendant, even if all

---

[10] *See also Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1070 (10th Cir. 2008) ("Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can be described as fair and just. A venerated principle to be sure, it is also one that has long eluded a definitive legal test and proven fertile ground for debate by law students, lawyers, and judges alike.").

the incidents underlying the claim occurred in a different state." *Avus Designs, Inc. v. Grezxx, LLC*, 644 F. Supp. 3d 963, 974 (D. Wyo. 2022) (citations omitted).[11] However, "general jurisdiction is available [only] if the defendant's affiliations with the forum state are 'so continuous and systematic' that it is 'essentially at home' in the state." *Pilgrim's Pride Corp. v. Allegiant Elec., Inc.*, Civil Action No. 23-cv-02055-NYW-SBP, 2024 U.S. Dist. LEXIS 26053, at *12 (D. Colo. Feb. 14, 2024) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. at 924. "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 614 (10th Cir. 2012) (quotation omitted).

Alternatively, "specific jurisdiction is proper if there is 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Hood v. Am. Auto Care, Ltd. Liab. Co.*, 21 F.4th 1216, 1221 (10th Cir. 2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017)). "To determine when specific jurisdiction is properly exercised, courts are to assess two

---

[11] "Since the Supreme Court's canonical decision in *Int'l Shoe*…'specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced role.'" *Avus Designs, Inc. v. Grezxx, LLC*, 644 F. Supp. 3d 963, 974 (D. Wyo. 2022) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014)).

requirements: (1) that the defendant has 'purposefully directed [its] activities at residents of the forum,' and (2) that the suit 'arise out of or relate to those activities.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Although the Supreme Court has repeatedly held that "there must be a connection between the contacts and the suit, it has rejected a strict causation-only approach, instead emphasizing the suit must arise out of or relate to the defendants contacts with the forum." *Avus Designs, Inc.*, 644 F. Supp. at 974 (citation and internal quotation marks omitted).

## DISCUSSION

### I.   SeedX fails to state a claim upon which relief can be granted against Kanye 2020.

In accepting the well-pled factual allegations in the *Complaint* as true, we find that SeedX's claims against Kanye 2020 must be dismissed for failure to state a plausible claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). While SeedX pleads a "wide swath" of conduct related to Kanye 2020, it has failed to sufficiently plead factual conduct that nudges its complaint from the realm of conceivable to the realm of plausible. *See Robbins*, 519 F.3d at 1247.

### A.   *SeedX fails to state a claim against Kanye 2020 for breach of an oral or implied contract and breach of the implied covenant of good faith and fair dealing.*

To start, SeedX has failed to plausibly plead that a contract existed between itself and Kanye 2020. As such, it has failed to state a claim for breach of an oral contract because it has not plausibly pled that there was a contract to breach. Wyoming generally adheres to those oft-repeated axioms of contract formation. That is, an offer, acceptance,

11

and valuable consideration are required to form a valid contract. *Kindred Healthcare Operating, Inc. v. Boyd*, 2017 WY 122, 403 P.3d 1014, 1024 (Wyo. 2017). Moreover, the Wyoming Supreme Court has stated that mutual assent is necessary in any contract, but it needn't be the case that "each term [is] spelled out in minute detail. The parties need only agree upon the essentials of the contract and those essentials must be ascertainable." *Id.* (citing *Roussalis v. Wyo. Med. Ctr., Inc.*, 4 P.3d 209, 231–32 (Wyo. 2000) (citations omitted)). Ostensibly, forming a contract is a straightforward endeavor: "One party makes a manifestation of assent, called an offer, to another; the latter then makes a manifestation of assent, called an acceptance, to the former." *Roussalis*, 4 P.3d at 250 (citation omitted).

Although not dispositive, there is not a written contract between Kanye 2020 and SeedX. Rather, SeedX relies on an oral or implied contract theory. "For an oral contract to exist, its essential terms *must be defined with certainty*." *Davidson-Eaton v. Iversen*, 519 P.3d 626, 640 (Wyo. 2022) (citations omitted) (emphasis added). And because courts lack the authority to supply the terms of an agreement, "an oral agreement is unenforceable unless the contract terms are so certain that the court can require the specific thing agreed upon to be done." *Id.* (citation and internal quotation marks omitted).

SeedX's *Complaint* fails to provide sufficient factual detail that it and Kanye 2020 fleshed out any "essential terms" that would give rise to an oral contract. SeedX does not plead that Kanye 2020 offered it anything at all, and in fact, any interaction between the two was minimal at best. The vast majority of dealings were between SeedX and the

12

Lincoln Defendants, not Kanye 2020. Based on the *Complaint*, SeedX had been performing work for the Lincoln Defendants for several months without any contact with Kanye 2020. And on those rare occasions when SeedX communicated directly with Kanye 2020, SeedX does not allege there was any meaningful discussions that would evidence the type of mutual assent or essential terms required for contract formation. Therefore, we find SeedX has failed to state an oral breach of contract claim against Kanye 2020.

Similarly, SeedX fails to plausibly plead that an implied contract was formed. "An implied contract may be created by the parties' conduct, but the conduct from which that inference is drawn must be sufficient to support the conclusion that the parties expressed a mutual manifestation of an intent to enter into an agreement." *Shaw v. Smith*, 964 P.2d 428, 435–36 (Wyo. 1998) (citation and internal quotation marks omitted). In this regard, SeedX fails to plead relevant factual conduct by Kanye 2020 that would evidence the type of unspoken intent required to form an implied contract.

Because SeedX fails to plausibly plead that an oral contract exists between itself and Kanye 2020, it follows that there was no breach of the implied covenant of good faith and fair dealing.[12] And even if SeedX plausibly pled that an oral or implied contract

---

[12] Contract law in Wyoming provides that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Wilder v. Cody Country Chamber of Com.*, 868 P.2d 211, 220 (Wyo. 1994). This covenant "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." *Scherer Constr. LLC v. Hedquist Constr., Inc.*, 2001 WY 23, 18 P.3d 645, 653-654 (Wyo. 2001) (citing Restatement (Second) of Contracts, § 205 cmt. a. (1981)). "A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Id.*

existed, it fails to plead how Kanye 2020 breached that covenant. SeedX merely offers conclusory allegations that do not suffice under 12(b)(6), *Twombly*, and *Iqbal*.

### B. SeedX fails to sufficiently plead that an agency relationship existed between Kanye 2020 and the Lincoln Defendants.

SeedX seeks to bring Kanye 2020 into the fray by alleging that the Lincoln Defendants were acting as its agents in all dealing with SeedX. But similarly, SeedX has failed to plead sufficient facts to plausibly show that the Lincoln Defendants were agents of Kanye 2020. Under Wyoming's agency law, an agent-principal relationship arises when "two parties agree that one, the agent, shall act on behalf of and subject to the control of the other, the principal." *Redco Constr. v. Profile Properties, LLC*, 2012 WY 24, 271 P.3d 408, 418 (Wyo. 2012); *Maverick Motorsports Grp., LLC v. Wyo. Dep't of Revenue*, 2011 WY 76, 253 P.3d 125, 133 (Wyo. 2011) (citing Restatement (Third) of Agency (2006)). The burden is upon the party alleging an agency relationship to demonstrate "both the existence and the nature thereof." *True v. Hi-Plains Elevator Mach.*, 577 P.2d 991, 997 (Wyo. 1978).

"[A]gency relationships come in two flavors: First, an agent can have actual authority, which exists if an agent 'reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.'" *DeClements v. RE/MAX LLC*, No. 1:20-cv-02075-DDD-SKC, 2020 U.S. Dist. LEXIS 253299, at *7 (D. Colo. Oct. 13, 2020) (quoting *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1251 (10th Cir. 2013)). "Second, an agent can have apparent authority,

14

meaning 'the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.'" *Id.* (quoting Restatement (Third) Of Agency § 2.03).

Here, the latter variety applies, for SeedX has failed to plead facts related to actual authority.[13] *See Weihai Textile Grp. Imp. v. Eruption Holdings, Inc.*, No. 21-MC-147-SWS, 2022 U.S. Dist. LEXIS 235259, at *12 (D. Wyo. Mar. 4, 2022). That is, SeedX does not plead that Kanye 2020 held the Lincoln Defendants out as if they possessed the authority to bind it; rather, all the initial communications and negotiations were with the Lincoln Defendants, with whom SeedX had a preexisting business relationship.

To make out an apparent authority argument, the "complaint must allege that the principal's 'manifestations' created a reasonable belief in a third party that the agent had authority to act on behalf of the principal." *Id.* Or put another way, "[t]o bind the principal under a theory of apparent authority, a third party must establish personal knowledge of, and reliance on, the apparent authority of the agent." *Id.* (citations and internal quotation marks omitted). Apparent authority can be established by "evidence of written or spoken words or other conduct of the principal which, reasonably interpreted, causes a person to believe that the principal consents to have the act done on his behalf

---

[13] SeedX does not plead any facts that would allow this court to draw a plausible inference that the Lincoln Defendants reasonably believed, in accordance with Kanye 2020's manifestations, that Kanye 2020 wished them to contract with SeedX on its behalf. *See Klassen v. Solid Quote LLC*, Civil Action No. 23-cv-00318-GPG-NRN, 2023 U.S. Dist. LEXIS 203237, at *8 (D. Colo. Nov. 14, 2023); *see Miller v. Life Care Centers of Am., Inc.*, 2020 WY 155, 478 P.3d 164, 173 (Wyo. 2020) (citation and internal quotation marks omitted) ("Apparent authority is created when the principal holds the agent out as possessing the authority to bind the principal or when the principal allows the agent to claim such authority.").

by a person purporting to act for him." *Rooftop Restoration v. Ohio Sec. Ins. Co.*, No. 15-cv-00620-LTB-KLM, 2017 U.S. Dist. LEXIS 231110, at *7 (D. Colo. July 12, 2017) (citations omitted).

Here, SeedX's *Complaint* fails to allege such manifestations on the part of Kanye 2020, and it fails to point to written or oral communications linked with Kanye 2020 that would make it reasonable to infer that an agent-principal relationship existed as opposed to just another client that the Lincoln Defendants contracted with. And even if the Lincoln Defendants had claimed to be Kanye 2020's agent, without more, that is not sufficient either. "In other words, a purported agent's actions alone cannot support a finding of apparent authority." *Collision Commc'ns, Inc. v. Nokia Sols. & Networks OY*, No. 20-cv-949-LM, 2023 U.S. Dist. LEXIS 142041, at *26 (D.N.H. Aug. 15, 2023) (citing Restatement (Third) of Agency § 2.03 cmt. c (2006)).

SeedX's *Complaint* is factually deficient when it comes to what precisely the Lincoln Defendants said or did that made it think they were agents of Kanye 2020 as opposed to contractors, vendors, etc. As Kanye 2020 points out, "nowhere [in the *Complaint*] does it allege any well pled facts that Kanye 2020 designated [the Lincoln Defendants] as its agent to contract on its behalf and bind Kanye 2020 to a contract; or that [the Lincoln Defendants] represented themselves as agents of Kanye 2020 with authority to contractually bind Kanye 2020." ECF No. 19 at 17. SeedX fails to show what precisely led it to believe that the Lincoln Defendants' business dealings with Kanye 2020 gave them the power to bind Kanye 2020 in a contract with a third party. From the

16

outside looking in, Kanye 2020 was just another client of the Lincoln Defendants not its principal. And SeedX's *Complaint* does little to dispel this assumption.

The nearest SeedX gets to adequately pleading an agency relationship, involves the theory of ratification. Ratification, as defined by the Restatement (Third) of Agency is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency § 4.01(1). However, ratification does not occur unless the act is itself "ratifiable." Under the restatement, an act is ratifiable "if the actor acted or purported to act as an agent on the person's behalf." *Id.* § 4.03 cmt. So, if the actor is not an agent, and does not purport to be one, ratification does not apply.

Here, SeedX's main argument is that after it had worked on launching the website and digital storefront, Mr. West became involved. ECF No. 1 ¶ 40. SeedX alleges that Mr. West had a call with SeedX and requested edits to a video on the website and later "followed up with several text messages, personally making and confirming changes to the digital storefront…." *Id.* In its *Complaint*, SeedX does not use the term ratification, but it is essentially arguing that Mr. West, after seeing the work that had been performed (*i.e.*, the website) ratified the Lincoln Defendants' contract with SeedX by asking for changes on the website and digital storefront. The problem, of course, is that SeedX has failed to sufficiently plead that the Lincoln Defendants were or purported to be Kanye 2020's agent, and therefore, ratification does not apply.

The Court is aware that agency is typically a factual issue to be resolved by a jury, but here, SeedX has not sufficiently alleged a factual basis giving rise to an inference of

agency between Kanye 2020 and the Lincoln Defendants. Without any substantial factual allegations showing that the Lincoln Defendants acted on behalf of Kanye 2020 pursuant to actual or apparent authority, SeedX has failed to plausibly allege a principal-agent relationship such that Kanye 2020 could be held liable for breach of contract.

### *C. SeedX fails to plausibly plead a quantum meruit/unjust enrichment claim against Kanye 2020.*

As the Wyoming Supreme Court has noted, "[i]n Wyoming, the elements of unjust enrichment are 1) valuable services were rendered; 2) to the party to be charged; 3) which services were accepted, used and enjoyed by the charged party; and 4) under circumstances that reasonably notified the party being charged that the other party would expect payment for the services." *Schlinger v. McGhee*, 2012 WY 7, ¶ 23, 268 P.3d 264, 272.

Even if SeedX could meet the first three elements, it certainly fails on the fourth. Under Wyoming law, a claim for unjust enrichment must accrue "under such circumstances which reasonably notified the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged." *Boyce v. Freeman*, 2002 WY 20, 39 P.3d 1062, 1065 (Wyo. 2002) (citations omitted). In its *Complaint*, SeedX fails to plausibly plead that Kanye 2020 would have been on notice that SeedX expected payment for work it believed the Lincoln Defendants performed. By SeedX's own admission Kanye 2020 paid millions of dollars for services rendered, services SeedX admits, at times, the Lincoln Defendants took credit for. But SeedX fails to plead how Kanye 2020 would have been put on notice that SeedX was not

paid by the Lincoln Defendants. The *Complaint* only alleges that SeedX repeatedly asked the Lincoln Defendants for payment, not Kanye 2020. In fact, based on the *Complaint* in this case and the complaint in the Texas case, it is tenuous whether Kanye 2020 even knew that SeedX was a distinct entity from the Lincoln Defendants. *See* ECF No. 19 at 6–7. Without further factual enhancement, we cannot draw a reasonable inference that Kanye 2020 is liable under an unjust enrichment theory. *See Iqbal*, 556 U.S. at 678. Therefore, we find that SeedX has failed to state an unjust enrichment claim against Kanye 2020.

## II. This Court lacks general and specific personal jurisdiction over the Lincoln Defendants

None of the Lincoln Defendants are "essentially at home" in Wyoming. As they note, Mr. Sproul, Fortified Consulting, LLC, Lincoln Strategy Group, LLC, and their respective members have never been to Wyoming let alone engaged in the type of activity in the forum that would make general jurisdiction proper. ECF No. 21 at 6–7. Additionally, the Lincoln Defendants were not served in the forum and do not consent to this Court's jurisdiction. Therefore, we lack general jurisdiction over the Lincoln Defendants, and our analysis turns on whether this Court has specific personal jurisdiction over the Lincoln Defendants.

When it comes to personal jurisdiction, we begin our analysis with the "minimum contacts" framework. First, we inquire whether the out-of-state defendants have "purposefully availed" themselves "of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov*, 514 F.3d at 1071 (citations

omitted). Second, we ask whether the claims "arise out of or relate to" the defendant's activities in, or conduct affecting, the forum. *Burger King*, 471 U.S. at 472; *see Dental Dynamics, Ltd. Liab. Co. v. Jolly Dental Grp., Ltd. Liab. Co.*, 946 F.3d 1223, 1229 (10th Cir. 2020) ("[E]nsuring the injury arises out of a defendant's forum related activities makes sure an adequate connection exists between the forum and the underlying controversy.").

If we find that sufficient minimum contacts exist, we inquire whether exercising personal jurisdiction would be reasonable—*i.e.*, would it offend those so-called "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. To that end, Courts consider several factors including "(1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Dental Dynamics*, 946 F.3d 1229 (citation omitted).

With those standards in mind, our threshold question in this case is: did any of the Lincoln Defendants purposefully avail themselves to Wyoming? As an initial matter, we note that the Lincoln Defendants did not initiate contact with the forum state; rather, Kanye 2020, a Wyoming corporation, sought the services of the Lincoln Defendants to aid in a national campaign—not a localized election in Wyoming. ECF No. 1 ¶ 26.

Additionally, nothing in the pleadings suggests that the Lincoln Defendants ever physically entered Wyoming.[14]

In sum, this business relationship between Kanye 2020 is the entirety of the Lincoln Defendants' connection to Wyoming. And while "contractual obligations may create sufficient ties to establish jurisdiction, an out-of-state resident's contract with a resident of the forum state is insufficient, standing alone, to create personal jurisdiction." *Dental Dynamics*, 946 F.3d 1223, 1230 (10th Cir. 2020) (citing *Burger King*, 471 U.S. at 478; *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004)). In the instant case, the fact that out-of-state residents entered a contractual relationship with a Wyoming corporation is insufficient to confer specific jurisdiction. *See Nuclear Cardiology Sys. Inc. v. Vivek Mangla M.D.*, No. 10-cv-00045-REB-CBS, 2010 U.S. Dist. LEXIS 51305, 2010 WL 2135298, at *4 (D. Colo. May 25, 2010).

Additionally, the referenced communications between Kanye 2020 and the Lincoln Defendants are equally insufficient, for "[i]t is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." *Far W. Capital v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995) (citation omitted). And this principle "holds true for text messages and emails" as well. *Flint v. Armonstrong*, No. 1:22-cv-00123-RJS-DBP, 2023 U.S. Dist. LEXIS 118454, at *20 (D. Utah July 7, 2023); *see Eighteen Seventy L.P.*, 532 F. Supp. 3d at 1137 ("Cell phone calls and emails constitute an even less meaningful relationship with a forum state considering

---

[14] Even if the Lincoln Defendants came to Wyoming, "[t]he mere fact that a party physically came to the forum state in furtherance of a business transaction does not compel the conclusion that minimum contacts are satisfied." *G&G Int'l, LLC v. Camsing Co., LLC*, Civil Action No. 09-cv-00366-MSK-MEH, 2010 U.S. Dist. LEXIS 11194, at *9 (D. Colo. Feb. 9, 2010).

the modern reality that a cell phone can be located anywhere in the world (as opposed to the old school land line) and an email address is not tied to a physical location.").

All this to say, it is not the amount or "quantum" of contacts with the forum, but their nature—*i.e.*, "the quantity of the contacts, their significance to the venture, and the overall purpose of the parties' efforts all factor into an assessment of the sufficiency of the contacts." *G&G Int'l, LLC v. Camsing Co., LLC*, Civil Action No. 09-cv-00366-MSK-MEH, 2010 U.S. Dist. LEXIS 11194, at *9 (D. Colo. Feb. 9, 2010) (citation omitted). When looking to the contacts involved in a contractual relationship, "relevant factors…include prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Benton*, 375 F.3d at 1077.

We find that SeedX's *Complaint* fails to sufficiently show that the relationship between Kanye 2020 and the Lincoln Defendants resulted in minimum contacts with Wyoming. *See Burger King*, 471 U.S. at 476. Although, a business/contractual relationship certainly existed, this is not enough. *Id.* SeedX must show that the Lincoln Defendants "purposefully directed [its activities] towards residents" of Wyoming. *Id.* And in taking a holistic view of the Lincoln Defendant's contacts with the forum, there is nothing in the record that suggests the Lincoln Defendants conducted any business in Wyoming or even discussed a perceived effect on Wyoming or its residents. We find the fact that the Lincoln Defendants worked on a national campaign, that happened to be rooted in Wyoming—without further contacts with the forum—is too attenuated to confer specific personal jurisdiction over them.

The Lincoln Defendants contact with Wyoming flowed entirely from the "fortuitous" fact that Mr. West had decided to make Wyoming his home. *See G&G Int'l*, 2010 U.S. Dist. LEXIS 11194, at \*14. Here, we find that the record does not show the Lincoln Defendants undertook any activity aimed at Wyoming other than those associated with the ordinary administration of a contract with a Wyoming corporation. *Id.* As such, we find that SeedX has failed to make a prima facie showing on the first prong of the minimum contacts test.

Even if we assume that SeedX could meet the first prong—*i.e.*, the Lincoln Defendants purposefully availed themselves to Wyoming—the second prong is wanting. To meet the second prong of the minimum contacts test, SeedX is required to show that the cause of action "arises out of" the Lincoln Defendants' activities with or in the forum. There are three main approaches to analyzing the "nexus" between the cause of action and the defendant's forum-related contacts: (1) but-for causation; (2) proximate-causation; and (3) substantial connection. *See Dudinikov*, 514 F.3d at 1078. Our circuit has categorically rejected the latter. *Id.* As to the remaining two, "[a] plaintiff satisfies the but-for standard if he shows the defendant's forum-related activities were an event in the causal chain leading to the plaintiff's injury." *Tomelleri v. MEDL Mobile, Inc.*, 657 F. App'x 793, 796 (10th Cir. 2016) (citation and internal quotation marks omitted). Alternatively, the proximate cause standard, "is considerably more restrictive and calls for courts to examine[] whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim." *Dudnikov*, 514 F.3d at 1078 (citation and internal quotation marks omitted).

In *Dudnikov*, the Tenth Circuit lacked occasion to definitively "pick sides."[15] And while our circuit "has declined to choose between but-for and proximate causation,…[i]n contract actions…[it has] consistently applied the more-restrictive proximate-cause approach." *Compañía De Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1285 (10th Cir. 2020) (citations and internal quotation marks omitted). Ostensibly, SeedX can satisfy a but for causation analysis,[16] for as it argues, "[i]f the [Lincoln] Defendants had not become part of the Kanye 2020 team and had not solicited SeedX's participation on that team, SeedX would not have performed substantial work on the Campaign without compensation." ECF No. 34 at 12.

However, we find SeedX cannot satisfy the more onerous proximate cause test. SeedX does not expressly discuss the proximate cause test, but a review of its *Complaint* and response to the Lincoln Defendants' *Motion* demonstrates a failure to show that any of the Lincoln Defendants' contacts with Wyoming are relevant to the merits of its claims. *See Dubnikov*, 514 F.3d at 1078. Therefore, we find that SeedX's claims do not arise out of the Lincoln Defendants' activities in Wyoming.

And finally, in finding that the Lincoln Defendants lack the requisite minimum contacts with the forum to confer personal jurisdiction, we needn't analyze whether

---

[15] *Dudnikov*, 514 F.3d at 1079 ("As between the remaining but-for and proximate causation tests, we have no need to pick sides today. On the facts of this case, we are satisfied that either theory adopted by our sister circuits would support a determination that plaintiffs' cause of action arises from the defendants' contact with Colorado.").

[16] This is because, in many respects, the but-for test is overinclusive. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 322 (3d Cir. 2007) ("But-for causation cannot be the sole measure of relatedness because it is vastly overinclusive in its calculation of a defendant's reciprocal obligations. The problem is that it 'has…no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain.'" (quoting *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 715 (1st Cir. 1996)).

exercising personal jurisdiction over the Lincoln Defendants would offend traditional notions of fair play and substantial justice.[17]

## III.   Transfer of Forum or Dismissal Without Prejudice?

In finding that personal jurisdiction is lacking over the Lincoln Defendants, we consider whether transfer would be warranted. *See* 28 U.S.C. § 1631 (allowing for transfer if the court determines jurisdiction is wanting and it is in the interest of justice to transfer it); *see In re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008). "The Tenth Circuit has held that § 1631 is the proper vehicle for transferring an action when the district court lacks personal jurisdiction." *Durlacher v. Hoffschneider*, No. 12-CV-59-ABJ, 2013 U.S. Dist. LEXIS 74175, at *15 (D. Wyo. May 23, 2013) (citing *Ross v. Colo. Outward Bound Sch., Inc.*, 822 F.2d 1524, 1527 (10th Cir. 1987)). And the decision of whether to transfer is in the discretion of the court. *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 105 (10th Cir. 2012).

Under § 1631, if a district court finds a lack of personal jurisdiction over a civil action, the court is required—if it is in the interest of justice—to transfer the action to any other court where the action could have been brought at the time it was filed. *Id.* (citing 28 U.S.C. § 1631). "Factors considered in deciding whether a transfer is in the interest of justice include whether the claims would be time barred if filed anew in the proper forum, whether the claims alleged are likely to have merit, and whether the claims were filed in good faith or if, on the other hand, it was clear at the time of filing that the court lacked

---

[17] This is because in finding insufficient minimum contacts with the forum, the burden does not shift to the Lincoln Defendants to show that exercising personal jurisdiction would nonetheless offend traditional notions of fair play and substantial justice. *See Eighteen Seventy L.P.*, 532 F. Supp. 2d at 1140 (citing *Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013); *Dudnikov*, 514 F.3d at 1080)).

25

the requisite jurisdiction." *Cline*, 531 F.3d at 1251. Here, on balance, the factors tip toward transfer.

As to the temporal factor, it appears that if we were to dismiss this action, it would be time-barred in Arizona.[18] *See Williams v. E & K Corp.*, No. CV-14-02699-PHX-GMS, 2016 U.S. Dist. LEXIS 12153, at *9 (D. Ariz. Feb. 2, 2016) ("In Arizona,…the statute of limitations for breach of an oral contract is three years…." (citing A.R.S. § 12-543)). SeedX first filed an action in Texas state court on May 5, 2021 for a breach that occurred sometime in late 2020 and early 2021. And after that action was ultimately dismissed, SeedX filed in this Court on August 10, 2023. Given this timeline, we assume, without deciding, that if we were we to dismiss the claims against the Lincoln Defendants, a claim brought in Arizona would likely be time-barred. Therefore, we find this factor supports transfer.

As to the Second factor, we find it supports transfer as well. Generally, transfer is not in the interest of justice if, after taking a peek at the merits, the court concludes that transfer would serve only to waste judicial resources and raise false hopes for an action "which is clearly doomed." *Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000) (citations omitted); *see Grynberg*, 490 F. App'x at 108. Here, however, after a cursory review we find that SeedX's claims against the Lincoln Defendants appear to have merit. And as such, the second factor weighs toward transfer.

---

[18] We find the District of Arizona is likely the most appropriate forum, given that the Lincoln Defendants are essentially "at home" there—providing general jurisdiction over them.

The third factor bends slightly toward dismissal. Plaintiff should have suspected that this Court lacked personal jurisdiction over the Lincoln Defendants. SeedX sought to bring the Lincoln Defendants into this forum solely on the attenuated basis of their contractual relationship with a Wyoming corporation. This, as discussed, is insufficient to confer personal jurisdiction. And while issues of specific personal jurisdiction can be complex, having its case dismissed in the Western District of Texas for lack of personal jurisdiction should have put SeedX on notice of such issues.

All told, we find transferring the claims against the Lincoln Defendants to the District of Arizona under § 1631 would be in the interest of justice. However, the claims against Kanye 2020 shall not be transferred due to SeedX's failure to state a claim upon which relief can be granted.

## CONCLUSION

Based upon the preceding, we find that SeedX has failed to state a claim upon which relief can be granted against Kanye 2020, and as such, Kanye 2020's *Motion* is **HEREBY GRANTED**, and all claims against Kanye 2020 are **DISMISSED WITHOUT PREJUDICE**. Additionally, we find that we lack personal jurisdiction over the Lincoln Defendants. However, because we find that transferring the remaining claims against the Lincoln Defendants under § 1631 is in the interest of justice we **HEREBY TRANSFER** the claims against the Lincoln Defendants to the United States District Court for the District of Arizona for further proceedings.

27

Dated this __19th__ day of April, 2024.


Alan B. Johnson
United States District Judge